# EXHIBIT G

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT<br>Civil Division: Contract |

BreezeAir, LLC

FILE NO.: _____

                    Plaintiff,

vs.                                                    **COMPLAINT**

North Central Aviation, Inc. and
Investment Leasing, LLC,

                    Defendants.

Plaintiffs, by and through their attorneys, allege as follows:

1.    Plaintiff, BreezeAir, LLC ("BreezeAir"), is a Minnesota Limited Liability Company with a Principal Executive Office located at 527 Tower Street, Northwest, Clearbrook, Mn. 56634.

2.    Defendant, North Central Aviation, Inc. ("NCA"), is a Minnesota Corporation with a Principal Executive Office located at 670 West County Road B, Roseville, Mn. 55113.

3.    Defendant, Investment Leasing, LLC ("Investment Leasing"), is a North Dakota Limited Liability Company with a Principal Executive Office located at 1059 Highway 5 Northeast, Bottineau, N.D. 58318.

## JURISDICTION AND VENUE

4.    Venue is proper in Hennepin County, as facts giving rise to this dispute occurred in Hennepin County and because Hennepin County is the venue the parties agreed upon by contract.

## FACTUAL BACKGROUND

5.    BreezeAir is the owner of a certain Citation model CJ2 aircraft bearing

**EXHIBIT G**

Manufacturer's Serial Number 525A–0009 and Federal Aviation Administration ("FAA") Registration Number N457MD, together with the engines, appliances, communications equipment, accessories, instruments, and other items of equipment installed thereon (collectively "Aircraft #1").

6.     Investment Leasing is the owner of a certain Citation model Citation V aircraft bearing Federal Aviation Administration ("FAA") Registration Number N753MB, together with the engines, appliances, communications equipment, accessories, instruments, and other items of equipment installed thereon (collectively "Aircraft #2").

7.     On or about February 15, 2016, BreezeAir entered into an Aircraft Lease Agreement with NCA, whereby BreezeAir leased Aircraft #1 to NCA.

8.     The Aircraft Lease Agreement required that NCA provide insurance for Aircraft #1 that would cover both liability and damage to Aircraft #1.

9.     On or about June 1, 2016, Investment Leasing entered into an Aircraft Lease Agreement with NCA, whereby Investment Leasing leased Aircraft #2 to NCA

10.     On or about December 5, 2016, Aircraft #1 was parked at Flying Cloud Airport in Eden Prairie, Minnesota when it was struck by Aircraft #2, this incident will be referred hereinafter as the "Accident".

11.     At the time of the Accident, Aircraft #2 was operated by NCA.

12.     Pursuant to Minnesota Law, NCA's operation of Aircraft #2 was as an agent of Investment Leasing.

13.     As a result of the Accident, Aircraft #1 sustained substantial damages, including damage to the aircraft, repair costs, storage costs, diminution in value, loss of use, lost profits, all of which are pled with particularity as general or special damages.

STARR00166

14.   NCA has refused to return Aircraft #1 to the condition it was before the accident.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

15.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

16.   The Aircraft Lease Agreement is a valid contract between BreezeAir and NCA.

17.   The Aircraft Lease Agreement required NCA to provide insurance sufficient to cover the damages incurred as a result of the Accident.

18.   The insurance provided by NCA is insufficient to restore Aircraft #1 to its pre-accident condition.

19.   NCA breached the contract by failing to provide insurance coverage adequate to cover the damage to Aircraft #1.

20.   NCA breached the Aircraft Lease Agreement by refusing to return Aircraft #1 to its pre-accident condition.

21.   As a result of NCA's breach, BreezeAir suffered damages in excess of $50,000.00.

### COUNT II
### NEGLIGENCE.

22.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

23.   On or about December 5, 2016, NCA was operating Aircraft #2 at Flying Cloud Airport.

24.   NCA had a duty of care in its operation of Aircraft #2.

25.   NCA breached its duty of care in its operation of Aircraft #2.

26.   As a result of its breach, Aircraft #2 struck Aircraft #1.

27.   As a result of NCA's negligence, BreezeAir suffered damages in excess of

3

$50,000.00.

## COUNT III
## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

28.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

29.   Pursuant to Minnesota Statutes §360.0216, NCA is deemed to be an agent of Investment Leasing in its operation of Aircraft #2.

30.   As a result of such agency, Investment Leasing is liable for the negligence of NCA in its operation of Aircraft #2.

31.   As a result of such agency, Investment Leasing is liable to BreezeAir in an amount in excess of $50,000.00.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby prays to this Court for the following relief against Defendant:

1.   For judgment against North Central Aviation, Inc. and in favor of BreezeAir, LLC, in an amount in excess of $50,000.00 pursuant to Count I of this Complaint;

2.   For judgment against North Central Aviation, Inc. and in favor of BreezeAir, LLC, in an amount in excess of $50,000.00 pursuant to Count II of this Complaint;

3.   For judgment against Investment Leasing, LLC, and in favor of BreezeAir, LLC, in an amount in excess of $50,000.00 pursuant to Count III of this Complaint;

4.   For an award of Plaintiff's costs and disbursements.

5.   Such other relief as this Court deems just and equitable.

STARR00168

GUZIOR ARMBRECHT MAHER

DATED: October 12, 2017

Joseph D. Kantor (#342373)
Timothy R. Maher (#295644)
2700 East Lake Street
Suite 3300
Minneapolis, MN 55406
(612) 373-0007
tmaher@gamlaw.net
jkantor@gamlaw.net
*Attorneys for the Plaintiff*

## ACKNOWLEDGEMENT

Costs, disbursements, and reasonable attorneys fees and witness fees may be awarded to Defendant pursuant to M.S.A. § 549.21, Subd. 2.

Dated: October 12, 2017

Timothy R. Maher
*Attorney for Plaintiffs*

5

# EXHIBIT H

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                              FOURTH JUDICIAL DISTRICT
                                                Case Type: Civil/Property Damage

_____

BreezeAir, LLC,                                 Court File No. 27-CV-17-19583
                                                Judge: Bruce A. Peterson
              Plaintiff,

v.                                                    AMENDED COMPLAINT

North Central Aviation, Inc.
Investment Leasing, LLC, and
Allianz Global Risks US
Insurance Company

              Defendants,

and

North Central Aviation, Inc.,

              Third Party Plaintiff,

v.

Thunderbird Aviation, Inc.,

              Third Party Defendant

_____

       Plaintiffs, by and through their attorneys, allege as follows:

       1.      Plaintiff, BreezeAir, LLC ("BreezeAir"), is a Minnesota Limited Liability

Company with a Principal Executive Office located at 527 Tower Street, Northwest, Clearbrook,

Mn. 56634.

       2.      Defendant, North Central Aviation, Inc. ("NCA"), is a Minnesota Corporation

with a Principal Executive Office located at 670 West County Road B, Roseville, Mn. 55113.

**EXHIBIT H**

3. Defendant, Investment Leasing, LLC ("Investment Leasing"), is a North Dakota Limited Liability Company with a Principal Executive Office located at 1059 Highway 5 Northeast, Bottineau, N.D. 58318.

4. Defendant, Allianz Global Risks US Insurance Company ("Allianz"), is a corporation organized under the laws of the State of California with its principle office located at 225 W. Washington Street, Suite 1800, Chicago, Il. 60606-3484, and is licensed by the Minnesota Department of Commerce to provide insurance in the State of Minnesota. .

## JURISDICTION AND VENUE

5. Venue is proper in Hennepin County, as facts giving rise to this dispute occurred in Hennepin County and because Hennepin County is the venue certain parties agreed upon by contract.

## FACTUAL BACKGROUND

6. BreezeAir is the owner of a certain Citation model CJ2 aircraft bearing Manufacturer's Serial Number 525A–0009 and Federal Aviation Administration ("FAA") Registration Number N457MD, together with the engines, appliances, communications equipment, accessories, instruments, and other items of equipment installed thereon (collectively "Aircraft #1").

7. Investment Leasing is the owner of a certain Citation model Citation V aircraft bearing Federal Aviation Administration ("FAA") Registration Number N753MB, together with the engines, appliances, communications equipment, accessories, instruments, and other items of equipment installed thereon (collectively "Aircraft #2").

8. On or about February 15, 2016, BreezeAir entered into an Aircraft Lease Agreement with NCA, whereby BreezeAir leased Aircraft #1 to NCA.

9.     The Aircraft Lease Agreement required that NCA provide insurance for Aircraft #1 that would cover both liability and damage to Aircraft #1.

10.    NCA entered into an Aircraft Insurance Policy ("Aircraft Policy") with Allianz. The Aircraft Policy covered the period from September 20, 2016 through September 20, 2017. The Aircraft Policy identified NCA as the named insured and BreezeAir as the insured owner of Aircraft #1.

11.    The Aircraft Policy provided policy limits of: $100,000,000 for premises liability, products liability (sale of aircraft, aircraft parts, food and beverage), host liquor liability, mobile equipment liability; $25,000,000.00, for personal injury liability; and identified Aircraft #1 as having an insured value of $2,700,000.

12.    On or about June 1, 2016, Investment Leasing entered into an Aircraft Lease Agreement with NCA, whereby Investment Leasing leased Aircraft #2 to NCA. The insurance for Aircraft #2 was not obtained from Allianz.

13.    On or about December 5, 2016, Aircraft #1 was parked at Flying Cloud Airport in Eden Prairie, Minnesota when it was struck by Aircraft #2, this incident will be referred hereinafter as the "Accident".

14.    At the time of the Accident, Aircraft #2 was operated by NCA.

15.    Pursuant to Minnesota Law, NCA's operation of Aircraft #2 was as an agent of Investment Leasing.

16.    The damage caused to Aircraft #1 resulted in the Aircraft not being flightworthy for its intended purpose.

17.    BreezeAir and NCA gave Allianz proper notice of the Accident and their losses to Allianz, and satisfied all other conditions precedent.

3

18.    NCA has refused to return Aircraft #1 to the condition it was before the accident.

19.    Allianz has refused to return Aircraft #1 to the condition it was before the accident.

20.    Investment Leasing has refused to return Aircraft #1 to the condition it was before the accident.

21.    By reason of either NCA, Investment Leasing, or Allianz refusing to return Aircraft #1 to its pre-accident condition, Breezeair has incurred substantial damages, including damage to the aircraft, repair costs, storage costs, diminution in value, loss of use, lost profits, loss of sale, all of which are pled with particularity as general or special damages.

22.    BreezeAir's damages include, but are not limited to: a minimum of $1,148,000.00 to repair Aircraft #1 and carrying costs of approximately $512,919.37 as of January 2018, which are increasing on a monthly basis.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

23.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

24.    The Aircraft Lease Agreement is a valid contract between BreezeAir and NCA.

25.    The Aircraft Lease Agreement required NCA to provide insurance sufficient to cover the damages incurred as a result of the Accident.

26.    The insurance provided by NCA is insufficient to restore Aircraft #1 to its pre-accident condition.

27.    NCA breached the contract by failing to provide insurance coverage adequate to cover the damage to Aircraft #1.

4

28.     NCA breached the Aircraft Lease Agreement by refusing to return Aircraft #1 to its pre-accident condition.

29.     As a result of NCA's breach, BreezeAir suffered damages in excess of $50,000.00.

## COUNT II
## NEGLIGENCE.

30.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

31.     On or about December 5, 2016, NCA was operating Aircraft #2 at Flying Cloud Airport.

32.     NCA had a duty of care in its operation of Aircraft #2 and in the prosecution and maintenance of the insurance claim with Allianz.

33.     NCA breached its duty of care in its operation of Aircraft #2 and in the prosecution and maintenance of the insurance claim with Allianz.

34.     As a result of its breach, Aircraft #2 struck Aircraft #1, and caused significant damage to Aircraft #1.

35.     As a result of its breach, Breezeair has been materially prejudiced in its insurance claim with Allianz.

36.     As a result of NCA's negligence, BreezeAir suffered damages in excess of $50,000.00.

## COUNT III
## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

37.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

38.     Pursuant to Minnesota Statutes §360.0216, NCA is deemed to be an agent of Investment Leasing in its operation of Aircraft #2.

39.     As a result of such agency, Investment Leasing is liable for the negligence of

NCA in its operation of Aircraft #2.

40.     As a result of such agency, Investment Leasing is liable to BreezeAir in an amount in excess of $50,000.00.

## COUNT IV
## BREACH OF CONTRACT

41.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

42.     The Aircraft Policy was in effect at the time of the Accident.

43.     Upon information and belief, NCA and BreezeAir have performed all of their obligations under the Aircraft Policy.

44.     Allianz has failed and refused to fully compensate BreezeAir for the damage to Aircraft #1 by refusing to authorize an appropriate funds for reasonable repairs to Aircraft #1 whereby returning it to its pre-accident condition.

45.     The failure and refusal of Allianz to repair Aircraft #1 constitutes a breach of the Aircraft Policy.

46.     Allianz's refusal is without basis in law or fact and has forced BreezeAir to incur further damages.

47.     As a result the breach by Allianz, BreezeAir has suffered damages in excess of $50,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby prays to this Court for the following relief against Defendant:

1.     For judgment against North Central Aviation, Inc. and in favor of BreezeAir, LLC, in an amount in excess of $50,000 pursuant to Count I of this Complaint;

2.     For judgment against North Central Aviation, Inc. and Investment Leasing, jointly

and severally, and in favor of BreezeAir, LLC, in an amount in excess of $50,000 pursuant to
Counts II and III of this Complaint;

3.      For judgment against Allianz, and in favor of BreezeAir, LLC, in an amount in
excess of $50,000, plus interest under MN. Stat. 60A.0811, pursuant to Count IV of this
Complaint;

4.      Pre-judgment interest at the statutory rate;

5.      For an award of Plaintiff's costs and disbursements.

6.      For an award of Attorneys' fees and costs associated with this action as
authorized by the parties' Aircraft Lease Agreement.

7.      Such other relief as this Court deems just and equitable.

GUZIOR ARMBRECHT MAHER

DATED: February 23, 2018            */s/ Timothy R. Maher*
                                    Joseph D. Kantor (#342373)
                                    Timothy R. Maher (#295644)
                                    2700 East Lake Street
                                    Suite 3300
                                    Minneapolis, MN 55406
                                    (612) 373-0007
                                    tmaher@gamlaw.net
                                    jkantor@gamlaw.net
                                    *Attorneys for the Plaintiff*

ACKNOWLEDGEMENT

Costs, disbursements, and reasonable attorneys fees and witness fees may be awarded to
Defendant pursuant to M.S.A. § 549.21, Subd. 2.

Dated: February 23, 2017            */s/ Timothy R. Maher*
                                    Joseph D. Kantor
                                    *Attorney for Plaintiffs*

7

# EXHIBIT I

## Page 1

1

1   STATE OF MINNESOTA        IN DISTRICT COURT

2   COUNTY OF HENNEPIN   FOURTH JUDICIAL DISTRICT

3   - - - - - - - - - - - - - - - - - - - - -

4   BREEZEAIR, LLC,

5              Plaintiff,

6       vs.

7   NORTH CENTRAL AVIATION, INC., and
    INVESTMENT LEASING, LLC,

8              Defendants.

9       and

10  NORTH CENTRAL AVIATION, INC.,

11             Third-Party Plaintiff,

12      vs.

13  THUNDERBIRD AVIATION, INC.,

14             Third-Party Defendant.

15  - - - - - - - - - - - - - - - - - - - - -

16

17

18           Deposition of AARON HOLZEMER, taken
         pursuant to Notice of Taking Deposition, and
19       taken before Gary W. Hermes, a Notary Public
         in and for the County of Ramsey, State of
20       Minnesota, on the 10th day of September, 2018,
         at 12800 Whitewater Drive, Minnetonka,
21       Minnesota, commencing at approximately 1:05
         o'clock p.m.

22

23

24

25           AFFILIATED COURT REPORTERS, 2935 OLD
         HWY. 8, ST. PAUL, MN  55113 (612)338-4348

## Page 2

1   APPEARANCES:

2       MICHAEL C. LINDBERG, ESQ., Attorney

3   at Law, 12800 Whitewater Drive, Suite 200,

4   Minnetonka, Minnesota 55343, appeared for

5   Thunderbird Aviation, Inc.

6       KRISTA J. PEZEWSKI, ESQ., Attorney at

7   Law, 30 East 7th Street, Suite 3200, St. Paul,

8   Minnesota 55101, appeared for Allianz.

9       TIMOTHY SCHUPP, ESQ., Attorney at

10  Law, 33 South 6th Street, Suite 4400,

11  Minneapolis, Minnesota 55402, appeared for

12  Investment Leasing, LLC.

13      TYLER P. BRIMMER, ESQ., Attorney at

14  Law, 775 Prairie Center Drive, Suite 400, Eden

15  Prairie, Minnesota 55344, appeared for North

16  Central Aviation, Inc., and Kevin Skaggs.

17      JOSEPH D. KANTOR, ESQ., Attorney at

18  Law, 2700 East Lake Street, Suite 3300,

19  Minneapolis, Minnesota 55406, appeared for

20  BreezeAir, LLC.

22           *   *   *

23

24

25

## Page 3

1                    I N D E X

2   EXAMINATION BY MR. LINDBERG.............4

3   EXAMINATION BY MR. BRIMMER.............18

4   EXAMINATION BY MR. SCHUPP.............21

5   EXAMINATION BY MR. KANTOR.............26

6

7   RE-EXAMINATION BY MR. LINDBERG..........31

8   RE-EXAMINATION BY MR. BRIMMER..........31

9

10           *   *   *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## Page 4

1            P R O C E E D I N G S

2            AARON HOLZEMER,

3   called as a witness, being first duly sworn,

4      was examined and testified as follows:

5            *   *   *

6            EXAMINATION

7   BY MR. LINDBERG:

8   Q.   Will you state your name for the record,

9        please?

10  A.   Aaron Holzemer.

11  Q.   And what's your address?

12  A.   8575 Magnolia Trail, number 405, Eden Prairie,

13       Minnesota, 55344.

14  Q.   What do you do for a living, Mr. Holzemer?

15  A.   I'm a pilot.

16  Q.   Who are you a pilot for?

17  A.   I work for Gama Aviation presently.

18  Q.   Where are they located?

19  A.   Headquarters, Shelton, Connecticut.

20  Q.   Do they have a base here in the state of

21       Minnesota?

22  A.   Yes, I am Minneapolis-based, but the fleet

23       operates nationwide, so hard to call it a

24       base.

25  Q.   Is that a part 135 operation?

**EXHIBIT I**

---

**25**

1    they're in UTC as that is more conventional in
2    aviation records, helps --
3    Q.   Would you interpret them and then find out
4         when you left Westchester that morning?
5    A.   So, based on that -- (Examining documents),
6         Westchester is -- so it looks like we would
7         have left around 10:30 in the morning Eastern
8         time.
9    Q.   And you went to Toronto, to Midway, dropped
10        off your passengers, then a part 91 back into
11        Flying Cloud, right?
12   A.   Correct.  Looks like arriving -- so it looks
13        like that would have been in the evening, if
14        I'm doing this math right, around seven p.m.
15   Q.   Okay.  Thank you.  Is that consistent with
16        your recollection as you sit here today?
17   A.   It sounds right.  I assume that's correct, but
18        my recollection of that day is minimal.
19   Q.   Sure.  I know in log books typically you'll
20        log the day and the amount of time that you
21        flew, but not necessarily start and stop.  In
22        your particular log --
23   A.   Correct, yeah, it would not have the time of
24        day in it.
25   Q.   Right.  Would the part 135 log for NCA have

---

**26**

1    the time of day and the flight, do you think?
2    A.   Yes, they should have that.
3              MR. SCHUPP:  Great.  I don't have
4         any other questions.  Thank you.
5              EXAMINATION
6    BY MR. KANTOR:
7    Q.   All right.  My name is Joe Kantor.  I
8         represent Ken, who you identified earlier, and
9         BreezeAir.  I think most of this stuff has
10        been hit on pretty hard here, but I've got a
11        couple follow-up questions for you.  You
12        mentioned that typically on 457 Mike Delta you
13        were using Sentient contracts, is that
14        correct?
15   A.   Correct.
16   Q.   When did you start flying for North Central?
17   A.   Late 2015, I believe October or thereabouts.
18   Q.   Okay.  And did you fly a plane besides 457
19        Mike Delta when you first started there?
20   A.   No.  I did do a little training in a Cirrus
21        SR22 there, but never operated it in a
22        commercial fashion for them.
23   Q.   And so right from the get-go, then, in October
24        of 2015, you were flying the BreezeAir plane?
25   A.   Correct.

---

**27**

1    Q.   Now, when you started in October 2015, was the
2         Sentient contract in place?
3    A.   Yes, I believe it was.
4    Q.   Can you explain to me how the Sentient
5         contract worked?
6    A.   Sentient would essentially book the aircraft
7         for a block of days and then use it to fill
8         flight requests from their various members or
9         customers around the country.
10   Q.   Now, were these blocks of days every single
11        month from October 2015 through December of
12        2016?
13   A.   There were probably months where we didn't do
14        it for maintenance reasons.  I recall one
15        month where the aircraft had a longer-term
16        inspection that takes a few weeks, so I
17        believe we probably did not go on a Sentient
18        trip that month, but couldn't say for certain.
19        It would be most every month at least.
20   Q.   Now, Sentient would pay North Central Aviation
21        for all these days, correct?
22   A.   Correct.
23   Q.   And they would pay for the cost of the
24        airplane, the fuel, the insurance and you and
25        the second-in-command, correct?

---

**28**

1    A.   Yes.
2    Q.   Would Sentient pay monthly whether or not they
3         used the airplane, do you know?
4    A.   I don't know.
5    Q.   Do you know if there was any provision called
6         a guaranteed income or payments from Sentient?
7    A.   I don't know.
8    Q.   Do you know if any other airplanes at North
9         Central Aviation were being used under a
10        Sentient contract?
11   A.   I believe yes, but couldn't say for certain.
12   Q.   So there's been a lot of testimony today about
13        pop-ups and, you know, scheduled flights the
14        day of, essentially, correct?
15   A.   Yes.
16   Q.   Okay.  Now, with Sentient, when you're out for
17        ten days, do the requests for flights go
18        through the director of flight operations at
19        NCA or do they communicate directly with you?
20   A.   They would book the flights through North
21        Central Aviation, yes, then -- then they would
22        come to me.
23   Q.   And during those ten days, roughly ten days,
24        were there days where you weren't having
25        flights?

---

# EXHIBIT J

Case Type:  Contract

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

---

BreezeAir, LLC,

        Plaintiff,

    v.

North Central Aviation, Inc.,
Investment Leasing, LLC, and
Allianz Global Risks US Insurance
Company,

        Defendants,

    and

North Central Aviation, Inc.,

        Third-Party Plaintiff,

    v.

Thunderbird Aviation, Inc.,

        Third-Party Defendant.

Court File No: 27-CV-17-19583
Judge: Bruce A. Peterson

**NORTH CENTRAL AVIATION, INC.'S
MEMORANDUM
IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT**

---

### INTRODUCTION

This lawsuit arises from a December 5, 2016 collision between two aircraft on the ground at Flying Cloud Airport in Eden Prairie, Minnesota. The left wing of a taxiing Cessna Citation V private jet, FAA number N753MB ("moving jet"), struck the forward fuselage of a parked Cessna Citation CJ2 private jet, FAA number N457MD ("parked jet"), causing physical damage to both aircraft. Defendant Investment Leasing, LLC ("Investment Leasing") owned

EXHIBIT J

the moving aircraft. Plaintiff BreezeAir, LLC ("BreezeAir") owned the parked aircraft.

Defendant North Central Aviation, Inc. ("NCA") employed the pilot and co-pilot operating the moving aircraft at the time of the collision. The pilot and co-pilot were operating the moving aircraft with Investment Leasing's consent pursuant to a lease agreement between NCA and Investment Leasing. NCA, which operates a charter business, was also party to a lease agreement with BreezeAir, which governed NCA's use of the parked aircraft in its charter service.

BreezeAir has brought two claims against NCA, Count I for breach of the contract, and Count II for negligence. NCA seeks summary dismissal of BreezeAir's claims against NCA for all incidental and consequential damages, including but not limited to storage costs, diminution in value, listing costs, loss of sales, income loss, carrying costs, lost profits, and storage costs arising from the collision. BreezeAir contractually waived any right to recover incidental or consequential damages for any damage to the parked aircraft in its lease with NCA. NCA also seeks summary dismissal of Count I because NCA procured the required insurance and has not otherwise breached the Lease Agreement. There are no disputed facts pertinent to the resolution of either of those claims on a summary basis.

### STATEMENT OF THE ISSUES

1.  Does the Limitation of Liability provision in the Aircraft Lease Agreement between Breeze Air and NCA negate any claim by BreezeAir against NCA for indirect, incidental or consequential damages for the collision?

2.  Does the Limitation of Liability provision in the Aircraft Management Agreement between Breeze Air and NCA negate any claim by BreezeAir against NCA for indirect or incidental damages, or "any loss or profits whatsoever" for the collision?

3.  Did NCA meet its contractual obligation to provide insurance coverage for BreezeAir's aircraft?

**DOCUMENTS COMPRISING THE RECORD**

1.  Plaintiff's Amended Complaint.

2.  Amended Answer of Investment Leasing.

3.  All documents relied upon by Defendant Investment Leasing in its Motion for Summary Judgment. (Exhibits 1-6).

4.  Exhibit 7[1] – Aircraft Management Agreement effective September 16, 2013, between NCA and BreezeAir.

5.  Exhibit 8 – Managed Aircraft Endorsement from the Allianz insurance policy, applicable to the involved parked aircraft, and naming BreezeAir as an "insured owner."

6.  Declaration of Mark Fjestad.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

**The Involved Parties.**

BreezeAir is a Minnesota limited liability company. [Amended Compl. ¶1]. At all times pertinent to this action, BreezeAir owned the parked aircraft, a Cessna Citation CJ2 aircraft bearing FAA registration number N457MD. [*Id.* ¶6].

Investment Leasing is a North Dakota limited liability company with its principal executive office located in Bottineau, North Dakota. [*Id.* ¶3]. At all times pertinent to this action, Investment Leasing owned the moving aircraft, a Cessna Citation V aircraft bearing FAA registration number N753MB. [Answer of Investment Leasing ("Answer") ¶2]

---

[1] Reference to Exhibits 1 through 6 is to exhibits attached to the Affidavit of Timothy R. Schupp, filed on April 6, 2018. Exhibits 7 and 8 are attached to the Declaration of Sharon L. Van Dyck, filed contemporaneously with this memorandum.

NCA is a Minnesota corporation operating out of Flying Cloud airport in Eden Prairie, Minnesota running an air charter business.

**NCA's Contractual Relationships.**

In December 2016, NCA had a contractual relationship with both BreezeAir and Investment Leasing. On June 1, 2016, NCA and Investment Leasing entered into an Aircraft Lease Agreement with respect to the moving aircraft. The lease gave NCA permission to use the moving aircraft on a regular basis as part of its charter fleet.

Similarly, on February 15, 2016, NCA and BreezeAir entered into an Aircraft Lease Agreement with respect to the parked aircraft. [Exhibit 6]. As with the Investment Leasing lease, the Aircraft Lease Agreement between BreezeAir and NCA gave NCA permission to use the parked aircraft on a regular basis as part of its charter fleet. NCA and BreezeAir were also parties to an Aircraft Management Agreement, dated September 16, 2013. [Exhibit 7; Declaration of Mark P. Fjestad, ¶¶2 and 3]. Pursuant to the management agreement, NCA was responsible for management of the parked aircraft with respect to scheduling and logistics, procurement of maintenance services, obtaining appropriate aircraft storage space at the parked aircraft's primary operating base, and maintenance of pertinent records, all subject to the terms and conditions set forth in the management contract itself. [Exhibit 7]. All three contracts were in full force and effect on December 5, 2016.

**The Collision.**

The collision occurred on December 5, 2016 at approximately 6:50 p.m. at Thunderbird Aviation's ramp at Flying Cloud Airport. [Exhibit 3, Incident Report]. The moving aircraft, piloted by NCA employees, had begun its taxi for takeoff on a chartered trip to Dallas, Texas. [*Id.*]. The parked aircraft, having been flown by NCA earlier in the day, was unoccupied and parked for the night

on the Thunderbird ramp. [Exhibit 4, flight log for parked aircraft; Exhibit 3]. As the moving aircraft began its taxi the left wing of the moving aircraft struck the forward fuselage section of the parked aircraft causing damage to the parked aircraft. [Exhibit 3].

**The Lawsuit.**

BreezeAir sued NCA and Investment Leasing on or about October 12, 2017. BreezeAir brought two claims against NCA—one for breach of contract, and a second for negligence. BreezeAir's sole claim against Investment Leasing is one for vicarious liability for NCA's negligence. Upon being sued for negligent operation of the moving aircraft, NCA brought a third-party contributory-negligence claim against Thunderbird Aviation, Inc. ("Thunderbird").

BreezeAir recently amended its complaint, adding Allianz Global Risks US Insurance Company ("Allianz") as an additional defendant. The amended complaint alleges Allianz has breached its insurance contract with BreezeAir by refusing to repair the damage to the moving aircraft sufficiently to return that aircraft to its pre-collision state.

BreezeAir's Amended Complaint contains two claims against NCA, one for breach of contract (of the lease agreement), and the other for negligence. [Amended Complaint ¶¶23-29 and 30-36]. BreezeAir seeks recovery from NCA not only for the cost of repairing the damage to the parked aircraft, but also for consequential and incidental damages such as diminution in value, listing costs, loss of sale, income loss, carrying costs, lost profits, and storage costs. [Exhibit 5, Plaintiff's Initial Disclosures, Response No. 3 at 3-4].

NCA brings this motion for partial summary judgment seeking dismissal of BreezeAir's claims for incidental and consequential damages related to the damage to the parked aircraft. The motion should be granted because in both the Aircraft Lease Agreement and the Aircraft Management Agreement with

NCA, BreezeAir waived all claims against NCA for such incidental and consequential damages related to physical damage to the parked aircraft.

**ARGUMENT AND AUTHORITIES**

**I.   SUMMARY JUDGMENT STANDARD.**

Summary judgment is proper when there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn. 1996). The moving party has the burden of proof, and the non-moving party has the benefit of that view of the evidence most favorable to him. *Sauter v. Sauter*, 244 Minn. 482, 484-85, 70 N.W.2d 351, 353 (1955); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), *cited with approval in Thiele v. Stich*, 425 N.W.2d 580, 583 n.1 (Minn. 1988).

The party opposing a motion for summary judgment must present specific facts showing genuine issues for trial. Minn. R. Civ. P. 56.05; *Lundgren v. Eustermann*, 370 N.W.2d 877, 881 (Minn. 1985). Determination of whether there is an absence of a genuine issue of a material fact requires scrutiny of the pleadings, depositions, admissions, and affidavits, if any, contained in the record. *Sauter*, 244 Minn. at 485, 70 N.W.2d at 353. A genuine issue of material fact for trial "must be established by substantial evidence." *DHL, Inc. v. Russ*, 566 N.W.2d at 70, *citing Murphy v. Country House, Inc.*, 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976). The term "substantial evidence" refers to legal sufficiency, not the quantum of the evidence submitted. *Id.* Summary judgment is proper where there is no issue to be tried. *Sauter*, 244 Minn. at 485, 70 N.W.2d at 353.

The construction and effect of a contract presents this court with a question of law unless ambiguity exists. *Brookfield Trade Center, Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Ambiguity exists when the

language of a written document, by itself, is reasonably susceptible to more than one interpretation. *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn. 1990). In interpreting a contract, the language used is to be given its plain and ordinary meaning. *Brookfield Trade Center*, 584 N.W.2d at 394. A contract is to be interpreted so all its terms have meaning, and contract terms, while given their plain meaning, are to be read in the context of the entire contract. *Id.*

II.   **THE LIMITATION OF LIABILITY PROVISIONS IN THE TWO CONTRACTS BREEZEAIR ENTERED INTO WITH NCA ARE ENFORCEABLE, THUS BREEZEAIR'S CLAIM FOR CONSEQUENTIAL AND INCIDENTAL DAMAGES MUST BE DISMISSED.**

BreezeAir entered into two contracts with NCA regarding its corporate jet, the parked aircraft. One was for management services, which included NCA making arrangements for the aircraft's storage. The other was a lease agreement, which permitted NCA to use the parked jet in its charter services. Both contracts contain a limitation of liability provision. Both contracts contemplate the purchase of insurance to cover physical damage to the parked aircraft, and any consequential and incidental damage related to that physical damage.

A.   **The Limitation of Liability Clauses in the Lease and Management Contracts Between BreezeAir and NCA are Enforceable, and Eliminate Any Liability NCA Might Otherwise Have for Consequential and Incidental Damages Related to Physical Damage to the Parked Aircraft, Even If Caused by Its Own Negligence.**

The Aircraft Management Agreement between BreezeAir and NCA contains both a waiver of claims clause and a limitation of liability clause. The Waiver of Claims clause in the Management Agreement provides:

> Except to the extent covered by Insurance, Customer [BreezeAir] waives any claim for damages, loss, or expense, whether it be uninsured loss, consequential loss, loss of use, or loss of profit as against Manager [NCA] and agrees to indemnify and hold Manager

harmless from any and all claims, loss or liability arising out of operation or use of Aircraft during the term of this Agreement.

[Exhibit 7, ¶3.3 at p.3, emphasis added.]. The Limitation of Liability Clause in the Management Agreement between BreezeAir and NCA provides:

> "THE PARTIES HEREBY AGREE . . . THAT <u>NEITHER PARTY SHALL HAVE ANY OBLIGATION TO THE OTHER FOR ANY INDIRECT, INCIDENTAL OR PUNITIVE DAMAGES, OR FOR ANY LOSS OR (sic-OF) PROFITS OF ANY NATURE WHATSOEVER ARISING</u> UNDER THIS CONTRACT OR <u>UNDER ANY</u> REMEDY AND (sic-OR) <u>TORT, WHETHER OR NOT ARISING FROM THE OTHER PARTY'S NEGLIGENCE</u> . . . ."

[Exhibit 7, ¶3.4 at p.3., emphasis added].

Similarly, the Aircraft Lease Agreement contains a Limitation of Liability provision, which provides:

> <u>IN NO EVENT SHALL EITHER PARTY TO THIS AGREEMENT BE LIABLE FOR</u> SPECIAL, INDIRECT, INCIDENTAL OR <u>CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER,</u> INCLUDING, WITHOUT LIMITATION, DAMAGES ARISING FROM LOSS OF USE, LOSS OF REVENUE OR PROFIT, OR DIMINUTION IN VALUE OF THE AIRCRAFT.

[Exhibit 2, ¶9(c) at p.7]. In each of these paragraphs, BreezeAir contractually waived any right it otherwise might have had against NCA for any kind of consequential or incidental damages relating to the parked aircraft, even if the damage was due to NCA's negligence. As between themselves, BreezeAir and NCA agreed to insure the risk of physical damage to the parked aircraft, along with any associated consequential and incidental losses, and to waive any liability that might remain for those damages. [Exhibit 7, ¶2.4 at p.3; Exhibit 2, ¶8 at p.5].

NCA purchased the insurance called for in the Lease Agreement. NCA is the named insured under a comprehensive insurance policy it purchased from Allianz to cover, among other things, physical damage to certain aircraft in its leased fleet. One of the aircraft covered by the Allianz policy on December 5,

2016 was the parked aircraft. [Exhibit 8, Managed Aircraft Endorsement]. The Managed Aircraft Endorsement identifies BreezeAir as an Insured Owner, identifies the parked aircraft, and insures the parked aircraft with physical damage coverage up to its insured value of $2,700,000. [Exhibit 8 at ¶¶1 and 2 at pages 1 and 2].

The plain language of the limitation of liability paragraphs, standing alone and in the context of the entire contract, clearly and plainly express an intention that each party release the other from liability for <u>all</u> consequential or indirect damages of any kind—specifically including without limitation any loss of use, loss of revenue, or diminution in value associated with physical damage to the parked aircraft. The liability limitation applies even if the loss was caused by the other party's own negligence.

Contractual agreements to exonerate the parties from liability, even for their own negligence, are generally, upheld in the commercial context. *See Indep. School Dist. v. Loberg Plumbing & Heating Co.*, 266 Minn. 426, 437, 123 N.W.2d 793, 800 (1963). As between two commercial parties, a contractual clause limiting or excluding liability for consequential damages will generally be enforced unless it is unconscionable. *International Fin. Servs. v. Franz,* 534 N.W.2d 261, 269 (Minn. 1995); Minn. Stat. § 336.2A-503(3). "An exclusion of consequential damages set forth in advance in a commercial agreement between experienced business parties represents a bargained-for allocation of risk that is conscionable as a matter of law. *Transport. Corp. of Amer. v. International Bus. Mach., Inc.*, 30 F.3d 953, 960 (8th Cir. 1994) (applying Minnesota law). This is true whether the contract at issue involves a sale, *International Fin. Servs.*, 534 N.W.2d at 269, a license, *Taylor Investment Corp. v. Weil,* 169 F. Supp. 2d 1046, 1059 (D. Minn. 2001) (applying and citing to Minnesota law), a construction contract, *Loberg,* 266 Minn. at 437, 123 N.W.2d

at 800, a lease, *Id.* at 800, n. 9, Minn. Stat. § 336.2A-503, or any other commercial agreement.

The Management and Lease contracts between BreezeAir and NCA are commercial contracts between two experienced business parties. The plain language of the Limitation of Liability clauses in those contracts, considered in the light of the contracts as a whole, reveals an intent to eliminate liability for all consequential and incidental damage related to physical damage to the parked aircraft, under all circumstances—including where that damage was caused by one party's own negligence. Since those clauses must be enforced under Minnesota law, NCA has no liability to BreezeAir for any consequential and incidental damages or losses related to the December 5, 2016 collision. Accordingly, those claims, including those consequential damages articulated in ¶21 and the carrying costs—incidental damages—articulated in ¶22 of the Amended Complaint, must be dismissed.

**B.   NCA Has Complied with the Lease Agreement, Thus Count I Must Be Dismissed.**

NCA and BreezeAir intended to allocate the risk of loss associated with physical damage to the parked aircraft, including any related incidental and consequential loss, to insurance. That intention is clearly set forth in the Lease Agreement. The insuring agreement, found at paragraph E of the Lease, requires NCA, the Operator under the lease, to "provide insurance coverage from a reputable insurance carrier related to Operator's possession, use, maintenance and operation of the Aircraft." [Exhibit 2, ¶8(a) at p. 5]. Among the coverages required is what is designated as "Hull Insurance":

> The policies will insure against the loss or damage from any cause or causes to the Aircraft for not less than $2,700,000.00 unless a different value is agreed upon in writing between Operator and Lessor.

10

In exchange for that agreement, the parties contracted to eliminate any liability to the other party for consequential and incidental damages related to loss or damage to the parked aircraft—no matter how caused—as discussed above.

BreezeAir's Breach of Contract claim against NCA alleges the Aircraft Lease Agreement "required NCA to provide insurance sufficient to cover the damages incurred as a result of the Accident," alleges the insurance NCA did purchase is insufficient "to restore [the parked aircraft] to its pre-accident condition," and subsequently alleges NCA breached the lease agreement in two ways—1) by "failing to provide insurance coverage adequate to cover the damage to (the parked aircraft)" and 2) by refusing "to return [the parked aircraft] to the condition it was before the accident." [Amended Complaint, ¶¶25, 27, and 28]. None of these allegations can be substantiated.

The Lease Agreement required NCA to purchase insurance to cover "the loss or damage from any cause or causes" to the parked aircraft "for not less than $2,700,000.00." NCA purchased insurance coverage from Allianz that provides coverage for damage to the parked aircraft up to the insured limit of $2,700,000." [Exhibit 8, ¶1, Item 4, at p.1]. NCA has purchased the insurance coverage the Lease Agreement required it to provide, in the required amount.

Nothing in the Lease Agreement requires NCA to return the parked aircraft to its pre-accident condition, even if that condition could be reasonably valued in excess of the $2,700,000.00 BreezeAir agreed to in the Lease Agreement. Having no contractual duty, there can have been no breach.

NCA complied with its contractual obligation to purchase insurance to cover damage to the parked aircraft "for not less than $2,700,000." NCA made no contractual agreement to return the parked aircraft to its pre-accident condition. There being no legal basis for the breach of contract claim, Count I in Plaintiff's Amended Complaint should be dismissed.

### CONCLUSION

BreezeAir and NCA, each competent in business matters, entered into two contracts regarding the use, care, and maintenance of BreezeAir's private jet—the parked aircraft. NCA contracted to lease the parked aircraft for use in its charter business, and to provide management services for that aircraft. Both parties contemplated assigning the business risk of all losses associated with physical damage to the parked aircraft to insurance, no matter the cause.

The Lease Agreement was drafted accordingly. It required NCA to purchase insurance to cover losses associated with physical damage to the parked aircraft, for a minimum insured value of $2,700,000.00. In light of the insurance requirements, the two parties contracted to eliminate any further liability to each other for loss associated with physical damage to the parked aircraft. This elimination of liability specifically included incidental and consequential damages, no matter the cause.

NCA purchased the required insurance coverage. The limitation of liability clauses in the lease and management contracts should be enforced. Count I for breach of contract against NCA, and all claims for consequential and incidental damages arising out of the collision should be dismissed.

Respectfully submitted,

**FAFINSKI MARK & JOHNSON, P.A.**

Dated: April 10, 2018

By:  _/s/ Sharon L. Van Dyck_
  Sharon L. Van Dyck (MN #0183799)
  Flagship Corporate Center
  775 Prairie Center Drive, Suite 400
  Eden Prairie, MN  55344
  Telephone:  952.995.9500
  sharon.vandyck@fmjlaw.com

**Attorneys for Defendant
and Third-Party Plaintiff,
North Central Aviation, Inc.**

12

# EXHIBIT K

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

---

BreezeAir, LLC,

        Plaintiff,

vs.

Investment Leasing, LLC, North Central
Aviation, Inc., and Allianz Global Risks US
Insurance Company,

        Defendants,

and

North Central Aviation, Inc.,

        Defendant and Third-Party
        Plaintiff,

vs.

Thunderbird Aviation, Inc.,

        Third-Party Defendant.

**ORDER GRANTING AND DENYING
MOTIONS FOR SUMMARY
JUDGMENT IN PART**

File No. 27-CV-17-19583
Judge Bruce A. Peterson

---

    The above-entitled matter came before the Honorable Bruce A. Peterson on May 9, 2018,
for hearing on the Motions for Partial Summary Judgment by Plaintiff, Defendant Investment
Leasing, LLC, and Defendant North Central Aviation, Inc. At the hearing, Plaintiff BreezeAir,
LLC, ("BreezeAir") was represented by attorneys Timothy Maher and Joseph Kantor. Defendant
Investment Leasing, LLC ("Investment Leasing") was represented by attorney Timothy Schupp.
Defendant North Central Aviation, Inc. ("NCA") was represented by attorney Sharon Van Dyck.
Defendant Allianz Global Risks US Insurance Company ("Allianz") was represented by attorney
Daniel Haws, and Third-Party Defendant Thunderbird Aviation, Inc. ("Thunderbird") was
represented by attorney Michael Lindberg. Based upon the hearing, the submissions of the
parties, and the files and records in the case, the Court makes the following:

**EXHIBIT K**

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

## ORDER

1. Defendant North Central Aviation, Inc.'s Motion for Summary Judgment on Count I of Plaintiff's Amended Complaint and on Plaintiff's claims for consequential and incidental damages in its Amended Complaint is GRANTED.

2. Defendant Investment Leasing, LLC's Motion for Partial Summary Judgment on Plaintiff's claims for consequential and incidental damages in its Amended Complaint is GRANTED.

3. Plaintiff's Motion for Partial Summary Judgment on Count III of its Complaint is DENIED.

4. The attached Memorandum is incorporated into this Order.

Dated: August 7, 2018

**BY THE COURT:**

_Bruce Peterson_

Bruce A. Peterson
Judge of District Court

## MEMORANDUM

### I.   FACTUAL BACKGROUND[1]

Plaintiff is a Minnesota limited liability company, which at all times pertinent to this action, owned a Cessna Citation CJ2 aircraft bearing FAA registration number N457MD ("Aircraft #1). Am. Compl. ¶6; Investment Leasing Answer ¶4. Ken Charpentier is Plaintiff's sole owner. Charpentier Aff., at ¶1, filed April 30, 2018. Charpentier is also the sole owner of Clearwater Energy Group, Inc., and has been in the pipeline construction business for 35 years. *Id.* at ¶¶ 3, 4. Investment Leasing is a North Dakota limited liability company, which at all times pertinent to this action, owned a Cessna Citation V aircraft bearing FAA registration number N753MB ("Aircraft #2). Am. Compl. ¶7; Investment Leasing Answer ¶4. NCA is a Minnesota corporation operating out of Flying Cloud airport in Eden Prairie, Minnesota, running an air

---

[1] The following facts are either undisputed or are disputed facts which must be viewed in the light most favorable to Plaintiff as the non-moving party.

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

charter business.

In December 2016, NCA had a contractual relationship with both Plaintiff and Investment Leasing. On or about February 15, 2016, NCA and Investment Leasing entered into an Aircraft Lease Agreement with respect to the Aircraft #1, which gave NCA permission to use the plane on a regular basis as part of its charter fleet. *See* Schupp Aff., Ex. 2. (hereinafter "Aircraft Lease"), filed April 6, 2018. On or about June 1, 2016, Investment Leasing entered into a similar agreement with NCA, whereby Investment Leasing leased Aircraft #2 to NCA. Am. Compl. ¶12; Investment Leasing Answer ¶7.

The Aircraft Lease agreement between Plaintiff and NCA contains a Limitation of Liability provision, which provides:

> IN NO EVENT SHALL EITHER PARTY TO THIS AGREEMENT BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER, INCLUDING, WITHOUT LIMITATION, DAMAGES ARISING FROM LOSS OF USE, LOSS OF REVENUE OR PROFIT, OR DIMINUTION IN VALUE OF THE AIRCRAFT.

Aircraft Lease ¶9(c).

The Aircraft Lease also required NCA to provide insurance as follows:

> (a) Insurance. [NCA] shall, at [Plaintiff's] sole cost and expense, provide insurance coverage from a reputable insurance carrier related to [NCA's] possession, use, maintenance, and operation of the Aircraft, as follows: . . . (ii) Hull Insurance. The policies will insure against the loss or damage from any cause or causes to [Aircraft #1] for not less than $2,700,000.00.

Aircraft Lease ¶8. NCA acquired physical damage insurance coverage for Airplane #1 from Allianz for an insured value of $2,700,000. Van Dyck Decl., Ex. 8, ¶1, Item 4.

On December 5, 2016, Aircraft #1 was parked at Flying Cloud Airport in Eden Prairie, Minnesota when it was struck by Aircraft #2; this incident will be referred hereinafter as the "Accident". Am. Compl. ¶13; Investment Leasing Answer ¶7. The Accident occurred at approximately 6:50 p.m. at Defendant Thunderbird Aviation's ramp when Aircraft #2, piloted by

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

NCA employees, had begun its taxi for takeoff on a chartered flight. Schupp Aff., Ex. 3, filed April 6, 2018. Aircraft #1, having been flown by NCA earlier in the day, was unoccupied and parked for the night on the Thunderbird ramp. Schupp Aff., Ex. 4, filed April 6, 2018. As Aircraft #2 began its taxi the left wing of the moving aircraft struck the forward fuselage section of Aircraft #1, causing damage to Aircraft #1. Schupp Aff., Ex. 3, filed April 6, 2018.

## II.   CONCLUSIONS OF LAW

Plaintiffs' Amended Complaint asserts two counts against NCA – (I) Breach of Contract and (II) Negligence; one count against Investment Leasing – (III) Vicarious Liability/Respondeat Superior Liability for NCA's negligence; and one count against Allianz – (IV) Breach of Contract. NCA moves for summary judgment on Count I, and both NCA and Investment Leasing move for partial summary judgment on Plaintiff's claims for incidental and consequential damages. In a cross-motion, Plaintiff seeks partial summary judgment on Count III against the affirmative defenses Investment Leasing relies on for its arguments – (1) that Defendant is entitled to all defenses arising out of the Aircraft Lease, (2) that Plaintiff's claims, in whole or in part, are barred by the Aircraft Lease, and (3) that Plaintiff's claims for damages for loss of use, loss of revenue or profit, diminution in value and any other incidental or consequential damage are barred by the Aircraft Lease.

### A.   Summary Judgment Standard

The standard for summary judgment is set forth in Minnesota Rule of Civil Procedure 56.03: "Summary judgment is appropriate where the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." In deciding summary judgment motions, "[t]he evidence [must be] construed in the light most favorable to the party opposing summary judgment." *J.E.B. v. Danks*, 785 N.W.2d 741, 747 (Minn. 2010). "The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 364 (Minn. 2009) (citing *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 897 (Minn. 1996)).

To raise a genuine issue of material fact, "the nonmoving party must present more than evidence 'which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

permit reasonable persons to draw different conclusions.'" *Id.* (quoting *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997)). "[M]ere allegations [are insufficient] to survive summary judgment." *DLH, Inc.*, 566 N.W.2d at 71.

Cross-motions for summary judgment constitute an agreement by the parties that the material facts are not in dispute. *American Family Mut. Ins. Co. v. Thiem*, 503 N.W. 2d 789, 790 (Minn. 1993).

### B. NCA's Motion for Summary Judgment

#### a. Count I – Breach of Contract

In its Complaint, Plaintiff claims that the Aircraft Lease "required NCA to provide insurance sufficient to cover the damages incurred as a result of the Accident," and that NCA breached the Lease Agreement by failing to provide insurance coverage adequate to cover the damages to Aircraft #1 and by refusing to return Aircraft #1 to its pre-accident condition. Am. Compl. ¶¶ 23-28. At summary judgment, NCA contends that it procured the required insurance and has not otherwise breached the Lease Agreement.

The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant. *See Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). The construction and effect of a contract presents this court with a question of law unless ambiguity exists. *Brookfield Trade Center, Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Ambiguity exists when the language of a written document, by itself, is reasonably susceptible to more than one interpretation. *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn. 1990). In interpreting a contract, the language used is to be given its plain and ordinary meaning. *Brookfield Trade Center*, 584 N.W.2d at 394. A contract is to be interpreted so all its terms have meaning, and contract terms, while given their plain meaning, are to be read in the context of the entire contract. *Id.*

The only requirements within the plain language of the Aircraft Lease relating to Plaintiff's claims were that NCA provide insurance form a "reputable insurance carrier" to insure against "the loss or damage from any cause or causes to [Aircraft #1] for not less than $2,700,000.00." Aircraft Lease ¶8. To that effect, NCA has produced a policy showing it

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

acquired physical damage insurance coverage for Airplane #1 from Allianz for an insured value of $2,700,000.00. Van Dyck Decl., Ex. 8, ¶1, Item 4.

Although Plaintiff claims the Aircraft Lease was breached by NCA's refusal to return Aircraft #1 to its pre-accident condition, that requirement is nowhere in the contract. Without mentioning final condition after resolution of insurance claims, the contract only requires that NCA provide $2,700,000.00 in hull insurance from a reputable insurance carrier, and NCA has produced unrefuted evidence it acquired a policy for that amount. While Plaintiff contends that Allianz's failure to pay Plaintiff's requested value on the insurance claim means NCA did not obtain the required insurance from a reputable insurer,[2] the contract also does not say that the required insurance has to pay out on any conceivable claim or that it has to pay exactly what is requested. Similarly, although Plaintiff contends that Allianz's refusal to pay incidental and consequential damages is ipso facto evidence that the correct insurance was not obtained, the requirement that the insurance pay incidental and consequential damages is also not written into the contract.

Disputes about the value an insurer should pay on a claim are common, and Plaintiff has produced no authority that the mere existence of such a dispute creates a genuine issue of material fact about whether the insurer is reputable or whether the insurance was actually acquired. Because the Aircraft Lease does not require return to pre-accident condition and no evidence has been produced that NCA failed to obtain the required insurance, Plaintiff's breach of contract claims should be dismissed, and NCA's Motion for Summary Judgment as to Count I should be granted.

### b. Plaintiff's Claims for Incidental and Consequential Damages

NCA also moves for judgment on Plaintiff's claims for incidental and consequential damages, contending that those damages have been limited by the Lease Agreement,[3] which

---

[2] Plaintiff also requested a continuance on NCA's Motion for Summary Judgment for more time to conduct additional discovery regarding the total damage to the aircraft and the reasonableness of Allianz's repair offer. The Court declines to grant a continuance on these grounds. The requirements of the contract are that the specified insurance was obtained and that Allianz be a reputable carrier. As Plaintiff alleges Allianz is not reputable solely because of its failure to pay this claim in full, a common occurrence, and there is no dispute that the policy was obtained, Plaintiff has failed to establish a basis for a continuance for discovery.

[3] In their motion papers and at the hearing, Plaintiff contends that the 2013 Aircraft Management Agreement was superseded by the 2016 Aircraft Lease Agreement, meaning that a 2013 clause waiving indirect, incidental, or punitive damages or for any loss of profits of "any nature whatsoever . . . whether or not arising from the other party's negligence" was not in effect. Because the Court finds herein that NCA is not liable for indirect or consequential damages under the 2016 Aircraft Lease Agreement, it does not reach a decision on whether the 2013

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

contains a Limitation of Liability provision that:

> IN NO EVENT SHALL EITHER PARTY TO THIS AGREEMENT BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER, INCLUDING, WITHOUT LIMITATION, DAMAGES ARISING FROM LOSS OF USE, LOSS OF REVENUE OR PROFIT, OR DIMINUTION IN VALUE OF THE AIRCRAFT.

Aircraft Lease ¶9(c).

In support of its contention, NCA notes that the Minnesota Supreme Court has held that between two commercial parties, a contractual clause limiting or excluding liability for consequential damages will generally be enforced unless it is unconscionable. *See International Fin. Servs. v. Franz*, 534 N.W.2d 261, 269 (Minn. 1995). NCA also notes that a federal court using Minnesota law has held that "[a]n exclusion of consequential damages set forth in advance in a commercial agreement between experienced business parties represents a bargained-for allocation of risk that is conscionable as a matter of law." *See Transport. Corp. of Amer. v. International Bus. Mach., Inc.*, 30 F.3d 953, 960 (8th Cir. 1994). This is true whether the contract at issue involves a sale or a lease. *See International Fin. Servs.*, 534 N.W.2d at 269; *see also Indep. School Dist. v. Loberg Plumbing & Heating Co.*, 123 N.W.2d 793, 800, n. 9 (1963). Although parties have not agreed that the Uniform Commercial Code ("UCC") governs the lease agreement, NCA also cites the UCC's provision that "[c]onsequential damages may be liquidated under section 336.2A-504, or may otherwise be limited, altered, or excluded unless the limitation, alteration, or exclusion is unconscionable." Minn. Stat. § 336.2A-503(3). "Limitation, alteration, or exclusion of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation, alteration, or exclusion of damages where the loss is commercial is not prima facie unconscionable." *Id.*

In response to NCA's argument, Plaintiff contends that the clause in the Aircraft Lease should not be enforced for multiple reasons.[4] First, Plaintiff contends that the damages it has

---

contract has been superseded.

[4] In addition to the arguments discussed below, Plaintiff also argues that the 2013 Aircraft Management Agreement is inapplicable, that the Limitation of Liability provision is unenforceable if NCA breached the contract, and that the limitation of liability provisions violate public policy because it could result in a limitation of Investment Leasing's liability. However, as noted above, the Court is not relying on the 2013 Aircraft Management Agreement in reaching its decision, and Plaintiff's breach of contract claim against NCA is dismissed herein. Plaintiff's argument regarding

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

listed in its Amended Complaint can be either direct or consequential/incidental damages, and that it is Plaintiff's position that it will seek these damages as direct general damages. Pl. Memo in Opp. to NCA's Mot. for Summ. J at 13. But the parties have not yet defined the scope of direct damages in this case, and it need not be decided here. Although Plaintiff seeks more discovery on damages, Plaintiff has not shown how further discovery will provide evidence of a genuine dispute of material fact as to the clause's applicability to consequential damages, however they may ultimately be defined, which is a matter of law.

Second, Plaintiff contends that the limitation clause is irrelevant because NCA was not operating Aircraft #1 at the time of the Accident, citing the Aircraft Lease at ¶2(a)(ii) for its contention that the provisions of the Aircraft Lease only apply when NCA is actually using the plane. However, ¶2(a)(ii) of the contract has nothing to do with limitation of liability and only requires that during "each usage" of Aircraft #1 by NCA, NCA "shall have and maintain operational control of the Aircraft. 'Operational control' shall mean . . . the exercise and of authority over initiating, conducting, or terminating a flight . . . Operator shall also maintain possession, command, and control of the aircraft during all uses hereunder." Aircraft Lease ¶2(a)(ii). By contrast, the limitation of liability clause, Aircraft Lease ¶9(c), has no limitation to "each usage" and is clearly applicable to the entire term of the lease.

Third, Plaintiff cites Charpentier's Affidavit for its contention that it had executed a contract to attempt to sell Aircraft #1 and claims this creates a fact issue about whether the Aircraft Lease was still in effect. However, the affidavit Plaintiff relies on states only that "[Plaintiff] was in the process of selling the aircraft," had "received multiple offers to purchase the aircraft" and "expected to close before the end of 2016." *See* Charpentier's Aff. ¶¶22-23. The affidavit further states that "[a]s a result of the accident, the sale was never completed." *Id.* ¶24. This evidence is insufficient to raise a general dispute of material fact that the Aircraft Lease was not in effect at the time of the Accident.

Fourth, Plaintiff cites *Braegelmann v Horizon Dev Co*, 371 N.W.2d 644 (Minn.Ct.App.1985), for its contention that indemnification contracts for a party's own negligence are disfavored by law and *Farmington Plumbing and Heating Co. v. Fischer Sand & Aggregate Inc.*, 281 N.W.2d 838 (Minn. 1979), for the court's explanation that agreements must be strictly construed when the party seeks to escape its own negligence. While those cases are

---

Investment Leasing is discussed in the Court's analysis of Plaintiff's and Investment Leasing's cross-motions below.

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

about indemnification, Plaintiff argues that they are also instructive as to waiver of negligence. However, despite this characterization of the clause in the Aircraft Lease, it does not act as a waiver to Plaintiff's negligence claims. Instead, it acts merely as an agreed upon limitation on the consequential and incidental damages Plaintiff can pursue. Accordingly, as Plaintiff's negligence claim is not being dismissed at summary judgment, Plaintiff may still seek damages for negligence, but has contracted away the right to seek related consequential damages from NCA.

Next. Plaintiff argues that allowing the NCA to avoid liability for consequential damages would lead to an unconscionable result, citing *Overholt Crop Insurance Service v. Bredeson*, 437 N.W2d 698 (Minn. Ct. App. 1989), for its explanation that a contract provision is unconscionable if it such as "no man in his sense and not under delusion would make on the one hand, and no honest and fair man would accept on the other." Plaintiff claims that it would be unconscionable for NCA to obtain a damages waiver based upon the procurement of insurance, when the insurance does not cover those waived damages. However, the plain language of the contract does not link the consequential damages limitation to the insurance requirement. Plaintiff has not introduced evidence that when the contract was executed, the parties intended NCA would bear the risk that insurance would not cover consequential damages.

Plaintiff also argues that the parties were not of equal bargaining strength because Plaintiff owned only one plane and NCA operated many, and NCA drafted the contract. However, the question is whether the parties were sophisticated business entities of relatively equal bargaining power. *See International Financial Services, Inc. v. Franz*, 534 N.W.2d 261, 269 (Minn. 1995). Although the *International Financial Services* court did not establish a blanket rule that all such provisions would be enforced, it did distinguish between commercial situations between merchants and consumer transactions, holding that "where the parties were both merchants and there was no great disparity in their bargaining strength and where the claim is for commercial loss, there is nothing that makes it unconscionable to enforce the allocation of risk incorporated into the parties' contract." *Id.* Although Plaintiff is not a merchant, it is a commercial enterprise whose sole owner is also the sole owner Clearwater Energy Group, Inc., and has been in the pipeline construction business for 35 years. Charpentier Aff., at ¶¶3,4, filed April 30, 2018. The Aircraft Lease was also at least the third agreement executed between Plaintiff or Charpentier and NCA over their three-year relationship.  No facts have been

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

presented that some form of economic duress was present that might undermine Plaintiff's bargaining power. Plaintiff has not cited any authority that a commercial entity was deemed so unsophisticated that a limitation clause like the one here should not be enforced. As in the persuasive federal appellate decision cited by NCA, this Court concludes that this commercial agreement between experienced business parties is conscionable, and NCA's motion should not be denied.

Because contracts limiting consequential and incidental damages are enforceable under Minnesota law, and because Plaintiff's arguments for the unenforceability limitation provision in the Aircraft Lease are not compelling, NCA's motion to preclude consequential and incidental damages should be granted.

### C. Plaintiff's and Investment Leasing's Cross-Motions for Partial Summary Judgment

As the Court concluded above, Plaintiff's claims against NCA for incidental or consequential damage are barred by the Aircraft Lease. In its Motion for Partial Summary Judgment, Investment Leasing seeks to have that bar extended to preclude Plaintiff's incidental and consequential damage claims against Investment Leasing based on a vicarious liability theory. Investment Leasing contends that as NCA's principal, it is entitled to assert all of the defenses that exist between its agent (NCA) and Plaintiff because any alleged liability on the part of Investment Leasing is merely vicarious or derivative. In a cross-motion, Plaintiff seeks partial summary judgment against these affirmative defenses.

Minn. Stat. § 360.0216 establishes an agency relationship between an aircraft's owner and its non-owner operators:

> When an aircraft is operated within the airspace above this state or upon the ground surface or waters of this state by a person other than the owner, with the consent of the owner, expressed or implied, the operator shall in case of accident be deemed the agent of the owner of the aircraft in its operation.

Minn. Stat. § 360.0216. Thus, aircraft owners face potential vicarious liability in the case of an accident, despite the absence of any negligent conduct on their part, for the actions of authorized non-owner operators of their airplanes.

In support of its motion, Investment Leasing cites *Booth v. Gades*, 788 N.W.2d 701

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

(Minn. 2010), for its contention that in the absence of independent tortious conduct on the part of the principal, a principal's liability extends only so far as its agent's liability, because the principal's liability "can be no greater" than the agent's. *Id.* at 710. In *Booth*, the Minnesota Supreme Court held that the plaintiffs' release of an alleged tortfeasor pursuant to a *Drake v. Ryan* settlement operated to bar plaintiff's subsequent claim of vicarious liability against the tortfeasor's employer, the City of Cyrus. *Id.* at 707. Finding that the plaintiffs were not claiming independent liability on the part of the City, but only that the City was vicariously liable for the torts of tortfeasor, the Court rejected plaintiffs' claim that the City faced any such liability. *Id.* at 707. The court explained that "[t]he well-established common law rule is that the release of the agent releases the principal from vicarious liability." *Id.*

Investment Leasing also cites Restatement (Second) of Agency § 217B(2) (1958) for its explanation that where action is based solely on tortious conduct of agent, judgment against principal cannot be in excess of judgment against agent, and  Restatement (Second) of Agency §§ 180 and 203 for their language that a principal, whether disclosed or undisclosed, is entitled to all defenses rising out of a transaction between his agent and third persons, but not personal defenses only available to his agent. Because NCA is not liable for consequential damages, and the NCA's contracted limitation on incidental damages is a transactional defense, Investment Leasing argues that it cannot have greater liability than NCA.

Finally, Investment Leasing cites an unpublished opinion with issues similar to the instant case. In *Guess v. Priore*, 2006 WL 2474095 (Minn. Ct. App. Aug. 29, 2006) the Minnesota Court of Appeals analyzed a plane accident under the same statute that creates an agency relationship in the instant case, Minn. Stat. § 360.0216. The court affirmed that the agent was immune from liability pursuant to worker's compensation law, a transactional defense. *Id.* at *3-4. The court held that "[a]n employer's vicarious liability is based on its employee's tortious acts occurring while conducting the employee's business. If the underlying liability does not exist, there can be no vicarious liability." *Id.* at 4 (citations omitted). Although the case is unpublished, the Court agrees with its logic.

Plaintiff counters that Restatement (Second) of Agency §§ 180 and 203 require that a contractual relationship exist where the agent must first enter into a contract on behalf of the principal, and that the lawsuit be based on the contractual relationship between all three parties. Plaintiff asserts that this did not happen in the instant case, where Investment Leasing has no

Filed in Fourth Judicial District Court
8/7/2018 12:17 PM
Hennepin County, MN

contractual relationship with Plaintiff. Plaintiff also cites Restatement (Second) of Agency's language that "[t]he principal has no defense because of the fact that… the agent had an immunity from civil liability as to the act." Restatement (Second) of Agency §217 (b)(ii). Plaintiff also notes that Minnesota courts have held that a principal may be held liable for the tort of an agent even if the agent is immune from suit. *See Poynter v. Otter Tail*, 25 N.W.2d 708 (1947); *see also Miller v. J.A. Tyrholm & Co.*, 265 N.W. 324 (Minn. 1936).

The cases and Restatements Plaintiff cites, however, are distinguishable from the instant case. The common element of each of them is that the agent had a personal defense based on immunity, which is not true in the instant case where NCA's defense is transactional based on contract. As noted in *Miller*, one of the cases Plaintiff cites, many things may occur that prevent enforcement against the agent but do not relieve the principal, such as death, bankruptcy, or financial insolubility. *Miller*, 265 N.W. at 326. These are all personal defenses different in kind from the transactional defense of the agent's negotiated contract. Furthermore, Plaintiff has not produced authority for its contention that limiting the liability of a principal to that of its agent requires that a contractual relationship exist between all three parties.

Although Plaintiff has shown that there are situations in which the principal may be held liable although the agent is not, the case law and other persuasive authority provided to the Court are universal in noting that those situations involve personal defenses which are not at issue here. Where the agents have contracted with the third-party for defenses to liability, either before or after the liability arose, the result upheld by the courts and evident in the Restatements is that the principal may also assert the contracted defense. For that reason, Investment Leasing may assert the contractual defense to consequential and incidental damages available to NCA, and as the Court has granted summary judgment in NCA's favor herein on that defense, Investment Leasing's Motion for Partial Summary Judgment as to those same damages should be granted.

# EXHIBIT L


Fafinski Mark & Johnson

775 Prairie Center Drive, Suite 400
Eden Prairie, MN 55344
P: 952.995.9500

700 North Minnesota Street, Suite B
New Ulm, MN 56073
P: 855.806.1525

October 24, 2017

**Via E-Mail and U.S. Mail**

Warren J. Mueller, III
Claims Manager
**STARR ADJUSTMENT SERVICES, INC.**
11625 Custer Road
Suite 110, Box 526
Frisco, TX 75035
warren.mueller@starrcompanies.com

Re:   December 5, 2016 incident involving Aircraft N753MB ("Insured Aircraft")
      Your File No.: A15.000095
      Your Named Insured: Investment Leasing
      Additional Insured: North Central Aviation, LLC

Dear Mr. Mueller:

I enclose a copy of a Summons and Complaint recently served on your insured and my client, North Central Aviation (NCA). That service commences a lawsuit in Hennepin County District Court in Minneapolis, Minnesota. Please consider this a tender for defense under the Starr Indemnity and Liability Company policy.

Please provide me with the contact information for the attorney selected to defend my client in this lawsuit, and confirmation that a timely answer will be forthcoming. In light of Starr's reservation of rights letter, if Starr opts to deny my clients a defense, please let me know that immediately, since I will need to make other arrangements to serve a timely response.

Sincerely,

Sharon L. Van Dyck /sb

Enclosures

cc:   North Central Aviation
      Kevin J. Johnson
      Timothy Schupp

Power of the Big. Spirit of the Small.                                fmjlaw.com

EXHIBIT L        STARR00197

# EXHIBIT M



**STARR**
COMPANIES
GLOBAL INSURANCE & INVESTMENTS

November 3, 2017

Sharon L. Van Dyck, Esq.
Fafinski, Mark & Johnson
775 Prairie Center Drive, Suite 400
Eden Prairie, MN  55344

Re:   BreezeAir, LLC v. North Central Aviation, Inc. and Investment Leasing, LLC
      State of Minnesota, County of Hennepin, District Court, Fourth Judicial
      District

Dear Ms. Van Dyck:

This letter acknowledges receipt of your October 24, 2017 letter on behalf of North Central Aviation, Inc. ("North Central") tendering the defense of North Central in the above referenced lawsuit to Starr Indemnity & Liability Company ("Starr Indemnity"). As discussed in more detail below, Starr Indemnity respectfully declines the tender of defense, because coverage does not exist under Starr Indemnity's Policy for the two causes of action asserted by BreezeAir, LLC ("BreezeAir") against North Central in the lawsuit.

**THE LAWSUIT**

The lawsuit is entitled *BreezeAir, LLC, Plaintiff v. North Central Aviation, Inc. and Investment Leasing LLC, Defendant,* pending in the State of Minnesota, County of Hennepin, District Court, Fourth Judicial District.

The Complaint alleges Investment Leasing, LLC ("Investment Leasing") is the owner of a Citation V aircraft, N753MB. The Complaint alleges Investment Leasing entered into an aircraft lease agreement on June 1, 2016 with North Central, leasing aircraft N753MB to North Central. North Central operated the aircraft N753MB in its aircraft charter business.

The Complaint alleges BreezeAir is the owner of a Cessna Citation CJ2 aircraft, N457MD. The Complaint alleges BreezeAir entered into an aircraft lease agreement on February 15, 2016 with North Central, leasing aircraft N457MD to North Central. North Central operated the aircraft, N457MD in North Central's aircraft charter business.

The Complaint alleges that on December 5, 2016, Investment Leasing's aircraft N753MB struck BreezeAir's aircraft N457MD, which was parked on the ramp at Flying Cloud Airport in Eden Prairie, Minnesota. The Complaint alleges Investment Leasing's

**EXHIBIT M**   STARR00066

Sharon L. Van Dyck, Esq.
November 3, 2017
Page 2

aircraft N753MB was being operated by North Central at the time of the incident, as an agent of Investment Leasing.

The Complaint seeks money damages in excess of $50,000 for damage to the aircraft N457MD, repair costs, storage costs, diminution of value of N457MD and lost profits. The Complaint asserts three causes of action: Count I (Breach of Contract) is asserted against North Central alleging North Central breached the February 15, 2016 lease agreement with BreezeAir by failing to provide adequate insurance coverage for damages allegedly sustained by BreezeAir as a result of the December 5, 2016 incident. Count II (Negligence) is asserted against North Central alleging North Central's negligent operation of aircraft N573MB (Investment Leasing owned) caused the damage to N457MD (BreezeAir owned). Count III (Vicarious Liability/Respondeat Superior) is asserted against Investment Leasing under Minn. Stat. §360.0216 as the owner of aircraft N573MB alleging Investment Leasing is liable for the negligence of North Central in its operation of N573MB.

## STARR INDEMNITY'S INSURANCE POLICY

Starr Indemnity issued its Aviation Policy, Policy No. 1000223033-01, for the policy period June 8, 2016 to June 8, 2017 (the "Policy") to Investment Leasing as the owner of aircraft N753MB. Investment Leasing is the **Named Insured** under the Policy. North Central is included as an additional insured under the Policy pursuant to Endorsement No. 18.

The insuring agreements are contained in Section I of the Policy. Coverage B – **Property Damage** Liability provides:

> To pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **property damage**.

The Policy defines **property damage** as follows:

> **Property damage** means (a) physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

The Policy defines **occurrence** as follows:

> **Occurrence** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** during the policy period neither expected nor intended

Sharon L. Van Dyck, Esq.
November 3, 2017
Page 3

from the standpoint of the **insured**. In the event of continuous or progressively deteriorating damage over any length of time, such damage shall be deemed to be one **occurrence**, and shall be deemed to occur only when such damage first occurs.

The Policy defines **insured contract** as follows:

(a) Any contract which requires as a prerequisite of the use of an airport or airport facility the          indemnification of a military or governmental          authority, except in connection with work performed for the military          or governmental authority;

(b) that part of any contract or agreement pertaining to ownership maintenance or use of **aircraft** or **premises** under which any **insured**    assumes the Tort Liability of another party    to pay for **bodily injury**          or **property damage** to a third person or organization.

The Policy contains the following Exclusions from coverage:

### Exclusion No. 5(a) of the Policy

5.   Under Coverages A, B, C, D and E

(a) To any liability for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)   that the **insured** would have in the absence of a contract or agreement; or

(2)   assumed in an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution and prior to the termination of the **insured contract.**

### Exclusion No. 7 of the Policy

7.   Under Coverages B and D, to **property damage** to property owned, occupied, rented or used by the **insured** or in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control or transported by the **insured.**

STARR00068

01/19/2018

Sharon L. Van Dyck, Esq.
November 3, 2017
Page 4

### COVERAGE ANALYSIS

A North Central crew was operating Investment Leasing's aircraft N753MB when its left wing struck parked aircraft N457MD, which was also operated by North Central. The incident caused property damage to both aircraft.

Count I of the Complaint alleges a claim for breach of contract against North Central alleging North Central breached the February 15, 2016 lease agreement with BreezeAir by failing to provide adequate insurance coverage for damages allegedly sustained by BreezeAir as a result of the December 5, 2016 incident. Count II of the Complaint alleges North Central was negligent in its operation of Investment Leasing's aircraft N573MB, causing damage to BreezeAir's aircraft N457MD. Count III is not asserted against North Central.

There is no coverage for Count I Breach of Contract because the claim for breach of contract does not involve an occurrence under the Policy. Count I is also excluded by Exclusion No. 5(a). The lease agreement between BreezeAir and North Central is not an **insured contract.**

In addition both Counts I and II are excluded by Exclusion No. 7. Exclusion No. 7 precludes coverage for property damage to property rented or used by the insured, or in the care, custody or control of the insured. North Central leased and operated BreezeAir's aircraft N457MD at the time of the incident. BreezeAir's liability claim is for property damage to N457MD, which was rented to North Central at the time of the incident. Accordingly, coverage for Counts I and II in BreezeAir's Complaint against North Central are excluded by Exclusion No. 7, as damage to property rented by the insured, North Central.

Starr Indemnity's coverage position is based on the information presently available to us. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy. Starr Indemnity expressly reserves all of its rights under the Policy, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.

If you have any additional information that you feel would cause us to review our position on coverage, we ask that you advise us as soon as possible.

Very truly yours,

Warren J. Mueller, III

---

STARR ADJUSTMENT SERVICES, INC.

11625 Custer Road, Suite 110, Box 526, Frisco, Texas 75035   Tel: (214) 212-8402
starrcompanies.com

STARR00069

Sharon L. Van Dyck, Esq.
November 3, 2017
Page 5

cc:    Investment Leasing, LLC
       Jeff Dalton – Wings Insurance

01/19/2018

# EXHIBIT N

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Starr Indemnity & Liability Company,

                Plaintiff,

v.

North Central Aviation, Inc.,

                Defendant.

Case No.:  18-cv-00098 (DWF/TNL)

**DEFENDANT'S
RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUESTS
FOR ADMISSIONS**

**To:** **Plaintiff Starr Indemnity & Liability Company,** and its attorneys of record, **MEAGHER & GEER, P.L.L.P.,** Timothy R. Schupp, Esq., and Robert W. Vaccaro, Esq., 33 South Sixth Street, Suite 4400, Minneapolis, MN  55402:

Defendant North Central Aviation, Inc. ("NCA" or "Defendant") gives the following responses to Plaintiff's First Set of Requests for Admissions as follows pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure.

### RESPONSES TO REQUESTS FOR ADMISSIONS

**Request No. 1:**

Admit that Exhibit A, attached hereto, is a true and correct copy of Aircraft Lease Agreement N457MD, dated February 15, 2016, between BreezeAir LLC and North Central Aviation, Inc.

**Response:**

Admit.

**Request No. 2:**

Admit that, pursuant to Aircraft Lease Agreement N457MD, dated February 15, 2016, North Central Aviation, Inc. leased aircraft N457MD from BreezeAir LLC.

**EXHIBIT N**

**Response:**

Admit that NCA contracted for the right to operate the N457MD as part of its charter service pursuant to the terms of an Aircraft Lease Agreement between NCA and BreezeAir, LLC dated February 15, 2016.

**Request No. 3:**

Admit that, at the time of the December 5, 2016 incident, in which aircraft N753MB struck aircraft N457MD, Aircraft Lease Agreement N457MD was in full force and effect.

**Response:**

Admit.

**Request No. 4:**

Admit that Exhibit B, attached hereto, is a true and correct copy of the aircraft flight log for aircraft N457MD.

**Response:**

Admit that Exhibit B is a true and correct copy of a portion of the aircraft flight log for aircraft N457MD.

**Request No. 5:**

Admit that the last flight crew who operated aircraft N457MD prior to the December 5, 2016 incident, in which aircraft N753MB struck aircraft N457MD, were North Central Aviation, Inc. personnel.

**Response:**

Admit both pilots who operated aircraft N457MD immediately before the December 5, 2016 incident were employed by NCA.

**Request No. 6:**

Admit that North Central Aviation, Inc. used aircraft N457MD on December 5, 2016.

**Response:**

Admit NCA operated aircraft N457MD on December 5, 2016.

<u>**Request No. 7:**</u>

Admit that, prior to the December 5, 2016 incident, in which aircraft N753MB struck aircraft N457MD, North Central Aviation, Inc. intended to operate aircraft N457MD after December 5, 2016.

<u>**Response:**</u>

Deny.

**FAFINSKI MARK & JOHNSON, P.A.**

Dated:  September 12, 2018                By:  *Sharon L. Van Dyck*
                                                            Sharon L. Van Dyck (0183799)
                                                            Tyler P. Brimmer (0392700)
                                                            Flagship Corporate Center, Suite 400
                                                            775 Prairie Center Drive
                                                            Eden Prairie, MN 55344
                                                            Telephone:  952.995.9500
                                                            Facsimile:   952.995.9577
                                                            sharon.vandyck@fmjlaw.com
                                                            tyler.brimmer@fmjlaw.com

                                                            **Attorneys for Defendant**
                                                            **North Central Aviation, Inc.**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Starr Indemnity & Liability
Company,

Case No.:  18-cv-00098 (DWF/TNL)

Plaintiff,

**CERTIFICATE OF SERVICE**

v.

North Central Aviation, Inc.,

Defendant.

---

I, Shanna Boomgaarden, state that on September 12, 2018, I served a copy of the following:

1. **Defendant's Answers to Plaintiff's Interrogatories;**
2. **Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents;**
3. **Defendant's Responses to Plaintiff's First Set of Requests for Admissions; and**
4. **Documents Bates labeled NCA (STARR) 1173 – NCA (STARR) 1221;**

upon the following named attorney, representing the Plaintiff, by addressing a true and correct copy thereof to said attorney's last known email address as follows:

Robert W. Vaccaro, Esq.
**MEAGHER & GEER, P.L.L.P.**
rvaccaro@meagher.com

I declare under penalty of perjury that everything I have stated in this document is true and correct.

Executed on September 12, 2018 in Hennepin County, Minnesota.

Shanna Boomgaarden